[Cite as *State v. Linzy*, 2013-Ohio-1129.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   | JUDGES:                        |
|--------------------------|---|--------------------------------|
| STATE OF OHIO            | : | Hon. Patricia A. Delaney, P.J. |
|                          | : | Hon. W. Scott Gwin, J.         |
| Plaintiff-Appellee       | : | Hon. John W. Wise, J.          |
|                          | : |                                |
| -vs-                     | : |                                |
|                          | : | Case No. 2012-CA-33            |
| CAREES LINZY             | : |                                |
|                          | : |                                |
| Defendant-Appellant      | : | O P I N I O N                  |


CHARACTER OF PROCEEDING: Criminal appeal from the Richland County Court of Common Pleas, Case No. 2012-CR-37H

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: March 25, 2013

APPEARANCES:

For Plaintiff-Appellee

For Defendant-Appellant

JAMES J. MAYER
BY: JOHN NIEFT
38 South Park Street
Mansfield, OH 44902

RANDALL FRY
10 West Newlon Place
Mansfield, OH 44902

*Gwin, J.*

{¶1} Defendant-appellant, Carees Linzy, ["Linzy"] appeals his convictions on two count of murder, each with a firearm specification, having a weapon while under disability, carrying a concealed weapon, tampering with evidence and possession of criminal tools. Plaintiff-appellee is the State of Ohio.

*Facts and Procedural History*

{¶2} On December 25, 2011, Linzy and his friend Kenny Graves went to Kostas Bar in Mansfield, Ohio. Linzy drank, shot pool, and ordered a six-pack of beer to go. Around 1:45 a.m. on December 26, 2011, Linzy left the bar carrying the six-pack of beer he had purchased. He sat down outside the bar at the table normally reserved for the bouncer and waited for his friend Graves.

{¶3} Gary Hall approached Linzy and told him he could not sit at that table. Hall then went back inside the bar. Graves came outside and spoke with Linzy. Hall came outside again to get a pack of cigarettes out of his car. Linzy followed behind Hall to his car, yelling and taunting him. As Hall attempted to return to the bar, he tried to avoid Linzy and Graves. However, Linzy and Graves encircled Hall. Linzy was yelling at Hall and got in his face.

{¶4} Hall punched Linzy in his left eye. A fight ensued. Linzy and Hall wrestled and fell into the fence that surrounded the smoking area. Linzy pointed a revolver and shot Hall twice. One shot was in the side of Hall's neck down into his lung. The next shot was across Hall's body. Hall then began to back up into the bar when Linzy shot Hall a third time. This bullet went through Hall's body and out his back, lodging in the wall of the Kostas Bar.

{¶5} Gary Hall ran inside the bar saying someone outside had a gun. Hall then ran to the kitchen and fell down, where he died.

{¶6} Steve Bulakovski, manager of the Kostas Bar that night, went outside to investigate. He asked Linzy who had the gun. Linzy said he did not know. Bulakovski then saw Linzy with the gun. Linzy began to walk away from the bar up Tower Drive and into a wooded lot. Bulakovski followed Linzy up the street. Officer Joseph Soehnlen of Mansfield Police Department arrived and followed them.

{¶7} Linzy attempted to hide behind a tree with a brush pile. Officer Soehnlen drew his weapon and approached. Linzy came out with his hands up and was arrested without incident. The search incident to arrest did not reveal the presence of a gun on Linzy's person. The gun was found hidden in a nook in the tree behind which Linzy had attempted to hide. The nook in the tree was above eye level, about seven feet off the ground. An examination of the revolver revealed three spent shell casings and two live rounds contained in the chambers.

{¶8} A gunshot residue kit was performed on Linzy and photographs were taken of the blood on his knuckles and hands. Upon booking, it was revealed that Linzy also had a bruised left eye.

{¶9} Linzy declined to make a statement and exercised his right to consult an attorney. While being transported to the jail, and after being told that he would be charged with murder, Linzy made an unsolicited statement to Officer Soehnlen, "I did not want that man to die, but he shouldn't have put his fucking hands on me. You live by the sword, you die by it."

{¶10} Evidence was collected after the homicide. A DVD copy of the video security system recording some of the incident was collected. DNA standards from Linzy, Gary Hall, and Kenny Graves were collected. The car in which Kenny Graves had fled in and his coat and sweater that had blood on them were collected.

{¶11} DNA testing of the handle, the trigger, and the front of the gun revealed that Linzy was the major contributor. Both Hall and Graves were excluded from that sample. The blood on Graves' jacket and sweater was Linzy's blood. Linzy was found positive for gunshot residue, as was Hall, but not Graves.

{¶12} A jury convicted Linzy on all six counts and specifications. The trial court sentenced Linzy on March 26, 2012, and a subsequent Sentencing Judgment Entry was filed on March 29, 2012. Subsequent to the Sentencing Entry filed on March 29, 2012, an amended Sentencing Entry was filed on April 10, 2012 after the Court discovered that it had neglected to include Linzy's sentence on count six of the indictment (criminal tools) in the previous sentencing entry. Linzy was sentenced to an aggregate sentence of 21 years to life with five years post-release control.

*Assignments of Error*

{¶13} Linzy raises six assignments of error:

{¶14} "I. THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT-APPELLANT'S MOTION TO CONTINUE THE JURY TRIAL.

{¶15} "II. THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT-APPELLANT'S MOTION IN OPPOSITION TO THE STATE'S MOTION FOR JURY VIEW.

**{¶16}** "III. THE TRIAL COURT ERRED IN OVER-RULING [sic.] THE DEFENDANT-APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO OHIO CRIMINAL RULE 29(A).

**{¶17}** "IV. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT-APPELLANT'S OHIO CRIMINAL RULE 29(C) MOTION FOR ACQUITTAL.

**{¶18}** "V. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY NOT INCLUDING THE DEFENDANT-APPELLANT'S PROPOSED REQUEST FOR INFERIOR DEGREE CHARGES IN THE COURTS JURY INSTRUCTION.

**{¶19}** "VI. THE VERDICT OF THE JURY FINDING TILE DEFENDANT-APPELLANT GUILTY ON ALL SIX CHARGES IN THE INDICTMENT WAS NOT SUPPORTED BY THE EVIDENCE."

I.

**{¶20}** Linzy argues that the court erred in denying his motion to continue. Linzy argued that the state intended to call 34 witnesses at trial and that counsel had insufficient time to prepare for trial.[1]

**{¶21}** Ordinarily a reviewing court analyzes a denial of a continuance in terms of whether the court has abused its discretion. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921(1964). If, however, the denial of a continuance is directly linked to the deprivation of a specific constitutional right, some courts analyze the denial in terms of whether there has been a denial of due process. *Bennett v. Scroggy*, 793 F.2d 772 (6th Cir. 1986). A defendant has an absolute right to prepare an adequate defense under the Sixth Amendment of the United States Constitution and a

---

[1] Linzy was arraigned on January 17, 2012 and trial commenced on March 19, 2012.

right to due process under the Fifth and Fourteenth Amendments. *United States v. Crossley*, 224 F.3d 847, 854(6th Cir. 2000).

**{¶22}** Among the factors to be considered by the court in determining whether the continuance was properly denied are: (1) the length of the requested delay, (2) whether other continuances had been requested and granted, (3) the convenience or inconvenience to the parties, witnesses, counsel and court, (4) whether the delay was for legitimate reasons or whether it was "dilatory, purposeful or contrived", (5) whether the defendant contributed to the circumstances giving rise to the request, (6) whether denying the continuance will result in an identifiable prejudice to the defendant's case, and (7) the complexity of the case. *Powell v. Collins*, 332 F.3d 376, 396(6th Cir.2003); *State v. Unger*, 67 Ohio St.2d 65, 67–68, 423 N.E.2d 1078, 1080(1981); *State v. Wheat*, 5th Dist. No. 2003–CA–00057, 2004–Ohio–2088, ¶ 16.

**{¶23}** In the present appeal, Linzy does not point to any identifiable prejudice to his case as a result of the denial of his motion to continue the trial date, such as the inability to subpoena a witness. Further, the trial court was not presented with any facts to indicate that defense counsel was unable to interview the state's witnesses. There was no showing of what efforts, if any, had been made to locate and interview state witnesses. Similarly, with respect to defense witness, he presented no facts to the court to indicate their identity, the materiality of their testimony, or the reasonable likelihood that they could be found. Finally, defense counsel gave no specifics to support his contention that he needed more time to adequately prepare a proper defense. Counsel did not, for example, state that he was otherwise committed, that he was unable to obtain sufficient discovery from the prosecutor, or that he needed

additional time to obtain evidence critical to his defense, such as psychiatric evaluation or medical records. *State v. Sowders*, 4 Ohio St.3d 143, 145, 447 N.E.2d 118(1983).

**{¶24}** We must be mindful of the " * * * elementary proposition of law that an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him." See *Smith v. Flesher*, 12 Ohio St. 2d 107, 233 N.E. 2d 137(1967); *State v. Stanton*, 15 Ohio St.2d 215, 217, 239 N.E.2d 92, 94(1968); *Wachovia Mtg. Corp. v Aleshire*, 5th Dist. App. No. 09 CA 4, 2009-Ohio-5097, ¶16. *See, also*, App.R. 12(D).

**{¶25}** Considering the lack of information presented to the trial court at the time of the request, the trial court clearly felt that competent counsel adequately represented Linzy and that there was no reason to delay the trial. As such, we find that the trial court did not abuse its discretion when it denied the motion to continue the trial.

**{¶26}** Linzy's first assignment of error is overruled.

II.

**{¶27}** Linzy contends that the trial court erred in granting the state's motion for a jury view.

**{¶28}** In the case at bar, the state filed a motion for a jury view February 22, 2012. On February 23, 2012, Linzy filed a motion in opposition to the state's motion. On February 24, 2012, the trial court granted the state's motion for a jury view.

**{¶29}** Linzy submits that where the jury is shown videotape footage of the scene and portions of the occurrence at the time it happened, a jury view should be considered irrelevant evidence as it has nothing to do with the incident which led to the charges filed against Linzy.

{¶30} R.C. 2945.16, pertaining to a jury view reads as follows,

When it is proper for the jurors to have a view of the place at which a material fact occurred, the trial court may order them to be conducted in a body, under the charge of the sheriff or other officer, to such place, which shall be shown to them by a person designated by the court.

{¶31} A view of a crime scene is not considered evidence, nor is it a crucial step in the criminal proceedings. *State v. Richey*, 64 Ohio St.3d 353, 367, 595 N.E.2d 915, 927(1992), *overruled on other grounds State v. McGuire*, 80 Ohio St.3d 390, 1997-Ohio-335, 686 N.E.2d 1112; *Accord  State v. Smith,* 90 Ohio App.3d 177, 180, 628 N.E.2d 120, 121(12th Dist. 1993); *State v. Hopner,* 112 Ohio App.3d 521, 542, 679 N.E.2d 321(2nd Dist. 1996). The trial court has broad discretion in determining whether to authorize a view of the crime scene. *Richey* at 367, *citing State v. Zuern*, 32 Ohio St.3d 56, 58, 512 N.E.2d 585, 588(1987).

{¶32} We must be mindful of the " * * * elementary proposition of law that an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him." See *Smith v. Flesher*, 12 Ohio St. 2d 107, 233 N.E. 2d 137(1967); *State v. Stanton*, 15 Ohio St.2d 215, 217, 239 N.E.2d 92, 94(1968); *Wachovia Mtg. Corp. v Aleshire*, 5th Dist. App. No. 09 CA 4, 2009-Ohio-5097, ¶16. *See, also*, App.R. 12(D).

{¶33} Linzy fails to articulate any prejudice he claims resulted from the jury view. "It is the duty of the appellant, not this court, to demonstrate [his] assigned error through an argument that is supported by citations to legal authority and facts in the record." *State v. Taylor*, 9th Dist. No. 2783-M, 1999 WL 61619(Feb. 9, 1999) at *3.

*See, also,* App.R. 16(A)(7). "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Kremer v. Cox* (1996), 114 Ohio App.3d 41, 60, 682 N.E.2d 1006(9th Dist. Sept. 11, 1996).

**{¶34}** From our careful review of the record, we conclude that the trial court did not abuse its discretion by granting a jury view of the crime scene.

**{¶35}** Linzy's second assignment of error is overruled.

### III, IV & VI

**{¶36}** Because Linzy's third, fourth and sixth assignments of error each require us to review the evidence, we shall address the assignments collectively.

**{¶37}** In his third and fourth assignments of error, Linzy alleges that the trial court erred in not granting his Crim. R. 29 motions for acquittal at the conclusion of the State's case and after trial, respectively. In determining whether a trial court erred in overruling an appellant's motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. *See, e.g., State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965, 974(1995); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492. (1991)

**{¶38}** In his sixth assignment of error, Linzy maintains that his convictions are against the sufficiency of the evidence and against the manifest weight of the evidence, respectively.

**{¶39}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether

"after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

{¶40} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶41} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and

created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

### *Murder and Felony Murder*

{¶42} Linzy was convicted of murder in violation of R.C. 2903.02(A), which states: "No person shall purposely cause the death of another * * *"

{¶43} R.C. 2901.22 Culpable mental states, provides:

(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender

intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

{¶44} Linzy was also convicted of one count of felony-murder (R.C. 2903.02(B)) based on a predicate felony offense of felonious assault (R.C. 2903.11).

{¶45} Felonious assault in violation of R.C. 2903.11(A)(2), states that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *."

{¶46} Pursuant to R.C. 2923.11(A), a deadly weapon is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

{¶47} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶48} In *State v. Jester,* 32 Ohio St.3d 147, 152, 512 N.E.2d 962, 968(1987), the Ohio Supreme Court held:

> Where an inherently dangerous instrumentality was employed, a homicide occurring during the commission of a felony is a natural and probable consequence presumed to have been intended. Such evidence is sufficient to allow a jury to find a purposeful intent to kill. *State v. Clark* (1978), 55 Ohio St.2d 257, 9 O.O.3d 257, 379 N.E.2d 597, *syllabus; State v. Johnson* (1978), 56 Ohio St.2d 35, 10 O.O.3d 78, 381 N.E.2d 637.

*Accord, State v. Widner*, 69 Ohio St.2d 267, 431 N.E.2d 1025(1982) (finding purpose to kill in passenger's firing gun at individual from moving vehicle); *State v. Dunlap*, 73 Ohio St.3d 308, 316, 652 N.E.2d 988(1995), *certiorari denied* (1996), 516 U.S. 1096, 116 S.Ct. 1096, 133 L.Ed.2d 765. *State v. Banks,* 10th Dist. No. 01 AP–1179, 2002–Ohio–3341 at ¶ 24.

The trier of fact may infer an intention to kill from the surrounding circumstances where the natural and probable consequence of a defendant's actions is to produce death. *State v. Robinson* (1954), 161 Ohio St. 213, 118 N.E.2d 517, paragraph five of the syllabus; *State v. Edwards* (1985), 26 Ohio App.3d 199, 200, 499 N.E.2d 352. Here, defendant looked at a group of individuals, pointed a semi-automatic handgun in their direction, and fired five shots. In so doing, one of the bullets fired from the handgun struck and killed his driver, Andre J. Bender. Although defendant claims the evidence equally supports a conclusion that he was merely trying to scare individuals in the group by firing the handgun into the air, "[t]he act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." *State v. Brown* (Feb. 29, 1996), Cuyahoga App. No. 68761, unreported. *Compare State v. Jester* (1987), 32 Ohio St.3d 147, 152, 512 N.E.2d 962 (when an inherently dangerous instrumentality is employed in the commission of a robbery, such evidence permits a jury to find a purposeful intent to kill).

*State v. Turner*, 10th Dist. No. 97APA05-709, 1997 WL 798770(Dec. 30, 1997), *quoting State v. Brown*, 8th Dist. No. 68761, 1996 WL 86627(Feb. 29, 1996) *dismissed, appeal not allowed*, 77 Ohio St.3d 1468, 673 N.E.2d 135.

**{¶49}** In this case, there was security video that showed the yelling at and taunting of Hall as he was walking to his car. On the way back into the bar, Linzy and Ken Graves cornered Hall. While cornered, Linzy got in Hall's face, yelling at him. Hall then punched Linzy in the eye. From there, a fight ensued where Hall and Linzy go off camera. Linzy admits firing three shot toward Hall at close range. After shooting Hall Linzy fled the area, hid the weapon and attempted to hide from the police.

**{¶50}** Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Linzy had committed the crimes charged.

**{¶51}** We hold, therefore, that the state met its burden of production regarding each element of the crimes of murder in violation of R.C. 2903.02(A) and felony-murder (R.C. 2903.02(B)) based on a predicate felony offense of felonious assault (R.C. 2903.11). Accordingly, there was sufficient evidence to support Linzy's convictions.

**{¶52}** Counts III, IV, and VI were having weapons while under disability, carrying a concealed weapon, and possession of criminal tool's respectively. These charges were all in relation to the gun.

### *Having Weapons under Disability*

**{¶53}** R.C. 2923.13(A)(3) defines having weapons while under disability,

(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

(1) The person is a fugitive from justice.

(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

(4) The person is drug dependent, in danger of drug dependence, or a chronic alcoholic.

(5) The person is under adjudication of mental incompetence, has been adjudicated as a mental defective, has been committed to a mental institution, has been found by a court to be a mentally ill person subject to hospitalization by court order, or is an involuntary patient other than one who is a patient only for purposes of observation. As used in this division, "mentally ill person subject to hospitalization by court order" and "patient" have the same meanings as in section 5122.01 of the Revised Code.

**{¶54}** Linzy admitted firing the firearm at Hall. Accordingly, he had possession and used a firearm. Linzy fled the scene with the gun after any threat had been neutralized which showed continued possession beyond any claim of provocation or self-defense. The evidence, including Linzy's testimony established he was under disability as provided in section 2923.14 of the Revised Code at the time of the incident in the case at bar.

**{¶55}** We hold, therefore, that the state met its burden of production regarding each element of the crime of having weapons while under disability. Accordingly, there was sufficient evidence to support Linzy's conviction.

### *Carrying Concealed Weapons*

**{¶56}** R.C. 2923.12 carrying a concealed weapon states, in relevant part,

(A) No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following:

(1) A deadly weapon other than a handgun;

(2) A handgun other than dangerous ordnance;

(3) A dangerous ordnance.

* * *

**{¶57}** If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "'such evidence to be irreconcilable with any reasonable theory of innocent in order to support a conviction. " *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E. 2d 492(1991) at paragraph one of the syllabus. "'Circumstantial evidence and direct evidence inherently possess the same probative value [.]'" Jenks, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "'[s]ince

circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d at 272, 574 N.E. 2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott* (1990), 1 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), *citing Hurt v. Charles J. Rogers Transp. Co.,* 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott*, 51 Ohio St.3d at 168, 555 N.E.2d 293, *citing Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

**{¶58}** In the case at bar, Linzy is the major contributor to the DNA mix on the gun handle and Hall and Graves are excluded from the mix. Linzy denied that he had a gun when confronted by the bar's manager immediately after the shooting. Linzy then fled the scene with the gun, and concealed it in a tree.

**{¶59}** Upon a careful review of the record and upon viewing the direct and circumstantial evidence in the light most favorable to the prosecution, we hold that the state met its burden of production regarding each element of the crime of carrying a concealed weapon. Accordingly, there was sufficient evidence to support Linzy's conviction.

### *Tampering with Evidence*

**{¶60}** R.C. 2921.12, tampering with evidence, provides

(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;

(2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation.

**{¶61}** In the case at bar, Linzy denied that he had a gun when confronted by the bar's manager immediately after the shooting. Linzy then fled the scene with the gun, and concealed it in a tree.

**{¶62}** Upon a careful review of the record and upon viewing the direct and circumstantial evidence in the light most favorable to the prosecution, we hold that the state met its burden of production regarding each element of the crime of tampering with evidence. Accordingly, there was sufficient evidence to support Linzy's conviction.

### *Possession of Criminal Tools*

**{¶63}** R.C. 2923.24, possession of criminal tools, provides,

(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.

(B) Each of the following constitutes prima-facie evidence of criminal purpose:

(1) Possession or control of any dangerous ordnance, or the materials or parts for making dangerous ordnance, in the absence of circumstances indicating the dangerous ordnance, materials, or parts are intended for legitimate use;

(2) Possession or control of any substance, device, instrument, or article designed or specially adapted for criminal use;

(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use.

**{¶64}** R.C. 2925.01(L) defines "possession" to mean, "having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

**{¶65}** In the case at bar, Linzy clearly exercised dominion and control over the gun when he used it to shoot Hall. He continued to exercise dominion and control over the gun when he hides it while denying to the bar's manager that he possessed a gun. He continued to exercise dominion and control over it while he leaves the scene and hides the gun in the tree. Linzy could not legally possess a firearm. Linzy admitted that he hid the gun because he did not want to be caught with it.

**{¶66}** Upon a careful review of the record and upon viewing the direct and circumstantial evidence in the light most favorable to the prosecution, we hold that the state met its burden of production regarding each element of the crime of possession

of criminal tools. Accordingly, there was sufficient evidence to support Linzy's conviction.

**{¶67}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(1999).

**{¶68}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig*, 10th Dist. No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the [judge] need not believe all of a witness' testimony, but

may accept only portions of it as true. *State v. Raver*, Franklin App. No. 02AP-604, 2003- Ohio-958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

{¶69} *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶70} In *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier

of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false. See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

**{¶71}** Although Linzy cross-examined the witnesses and argued he found the gun on the ground, that Hall provoked him and that he did not intend to kill Hall, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180(1990).

**{¶72}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury was in the best position to evaluate this competent, credible evidence, and we will not substitute our judgment for that of the trier of fact. The jury neither lost their way nor created a miscarriage of justice in convicting Linzy of the charges.

**{¶73}** Linzy's third, fourth and sixth assignments of error are overruled.

V.

**{¶74}** In his Fifth Assignment of Error, Linzy contends that the trial court erred in failing to give his requested jury instructions. More specifically, Linzy contends that the

trial court erred in refusing to instruct the jury regarding voluntary manslaughter involuntary manslaughter and reckless homicide.

**{¶75}** "[A]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 206(1990) paragraph two of the syllabus. If a requested instruction contains a correct, pertinent statement of the law and is appropriate to the facts, the instruction must be included, at least in substance. *State v. Nelson*, 36 Ohio St. 2d 79, 303 N.E.2d 865(1973) paragraph one of the syllabus, *overruled on other grounds by State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583(1982).

**{¶76}** However, the corollary of this maxim is also true. It is well established that the trial court will not instruct the jury where there is no evidence to support an issue. *Riley v. Cincinnati*, 46 Ohio St.2d 287, 348 N.E.2d 135(1976); *Murphy v. Carrollton Manufacturing Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832(1991). "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of an * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *Feterle v. Huettner*, 28 Ohio St.2d 54, 55-56, 275 N.E.2d 340(1971); *Murphy v. Carrollton Manufacturing Co.*, *supra*; *State v. Coleman*, 6th Dist. No. S-02-41, 2005-Ohio-318, ¶12.

Ohio law permits a trier of fact to consider three types of lesser offenses when determining a defendant's guilt:  "(1) attempts to commit the crime charged, if such an attempt is an offense at law; (2) inferior

degrees of the indicted offense; or (3) lesser included offenses." *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph one of the syllabus, construing R.C. 2945.74 and Ohio Crim.R. 31(C).

In determining whether an offense is a lesser-included offense of the charged offense, "the evidence presented in a particular case is irrelevant to the determination of whether an offense, as statutorily defined, is necessarily included in a greater offense." *State v. Barnes* (2002), 94 Ohio St.3d 21, 26, 759 N.E.2d 1240(2002) quoting *State v. Kidder* (1987), 32 Ohio St.3d 279, 282, 513 N.E.2d 311(1987); *see, also, State v. Koss*, 49 Ohio St.3d 213, 218-219, 551 N.E.2d 970(1990). However, the evidence in a particular case is relevant in determining whether a trial judge should instruct the jury on the lesser-included offense. If the evidence is such that a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser-included offense, then the judge should instruct the jury on the lesser offense. *State v. Shane*, 63 Ohio St.3d 630, 632-633, 590 N.E.2d 272(1992).

*Shaker Heights v. Mosely*, 113 Ohio St.3d 329, 332, 2007-Ohio-2072, 865 N.E.2d 859, ¶¶10, 11.

### *Voluntary Manslaughter*

**{¶77}** Voluntary manslaughter is defined in R.C. 2903.03(A):

No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation

occasioned by the victim that is reasonably sufficient to incite the person

into using deadly force, shall knowingly cause the death of another.

**{¶78}** Voluntary manslaughter is not a lesser-included offense of murder, but rather is an inferior degree of murder. Nonetheless, when determining whether an instruction on voluntary manslaughter should have been given, we apply the same test utilized when determining whether an instruction on a lesser-included offense should have been given. *State v. Shane*, 63 Ohio St.3d 630, 632, 590 N.E.2d 272(1992). An instruction on voluntary manslaughter is appropriate when "the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." Id.

**{¶79}** "Before giving a jury instruction on voluntary manslaughter in a murder case, the trial judge must determine whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction." *Shane,* at paragraph one of the syllabus. "The trial judge is required to decide this issue as a matter of law, in view of the specific facts of the individual case. The trial judge should evaluate the evidence in the light most favorable to the defendant, without weighing the persuasiveness of the evidence." Id. at 637, citing *State v. Wilkins*, 64 Ohio St.2d 382, 388, 415 N.E.2d 303(1980). "An inquiry into the mitigating circumstances of provocation must be broken down into both objective and subjective components." *Shane,* at 634.

**{¶80}** When determining whether provocation was reasonably sufficient to induce sudden passion or sudden fit of rage, an objective standard must be applied. Id*.* "For provocation to be reasonably sufficient, it must be sufficient to arouse the

passions of an ordinary person beyond the power of his or her control." *Shane* 63 Ohio St.3d at 635, 415 N.E.2d 303. Thus, the court must furnish "the standard of what constitutes adequate provocation, i.e., that provocation which would cause a reasonable person to act out of passion rather than reason." (Citations omitted.) *Shane* at 634, fn. 2. "If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction." *Shane* at 364. The subjective component of the analysis requires an assessment of "whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage." Id*.* "Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *State v. Mack*, 82 Ohio St.3d 198, 201, 694 N.E.2d 1328(1998).

**{¶81}** Unlike self-defense, the issue of who was the aggressor is not the determinative issue in a voluntary manslaughter defense; rather the appellant must show that he acted under a sudden rage or passion. Further, past incidents or verbal threats do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off. *State v. Huertas*, 51 Ohio St.3d 22, 31-32, 553 N.E.2d 1058, 1068-1069 (1990). See, also, *State v. Pierce*, 64 Ohio St.2d 281, 18 O.O.3d 466, 414 N.E.2d 1038 (1980).

**{¶82}** The trial court should have given an instruction on voluntary manslaughter if the evidence presented at trial demonstrated that Linzy had killed Hall while under the influence of a sudden passion or fit of rage caused by provocation from Hall that

was serious enough to incite him into using deadly force. In the case at bar, as we have already noted, Linzy never denied that he had fired the fatal shots. Linzy testified,

> I wouldn't have went through any more assault, the torture. I would have stopped it from the beginning, after the first hit...I would have shot the gun then.

5T. at 723. The only act that could arguably provoke a rage is when Hal punched Linzy in his face. However, one punch in the face is far from sufficient to cause the ordinary person to become angry beyond his or her control.

{¶83} Both Graves and Linzy had no memory of the events directly before the scuffle. Graves said he could remember leaving the bar following Linzy and could remember nothing else until he was driving away after the shooting of Hall. Linzy does not remember why he followed behind Hall to Hall's car, nor does Linzy remember what he, Linzy, was saying while he was pointing at Hall, why he was wagging his finger at Hall, or why he was in Hall's face. Linzy could not remember what was said by anybody and did not know why Hall hit him.

{¶84}  In the case at bar, Linzy shot Hall twice at close range. He then fired a third time as Hall was backing away attempting to get inside the bar. Linzy made the unsolicited statement to Officer Soehnlen, "I did not want that man to die, but he shouldn't have put his fucking hands on me. You live by the sword, you die by it."

{¶85}  Linzy's testimony that he did not intend to kill his victim does not entitle him to a lesser-included offense instruction. See *State v. Campbell*, 69 Ohio St.3d 38, 48, 630 N.E.2d 339; *State v. Thomas*, 40 Ohio St.3d 213, 217-218, 533 N.E.2d 286(1988). *State v. Wright,* 4th Dist. No. 01CA2781, 2002-Ohio-1462, ¶26. Even

though the defendant's own testimony may constitute some evidence supporting a lesser offense, if the evidence on whole does not *reasonably* support an acquittal on the murder offense and a conviction on a lesser offense, the court should not instruct on the lesser offense. *Campbell,* 69 Ohio St.3d at 47, 630 N.E.2d 339; *Shane,* 63 Ohio St.3d 632-633. "To require an instruction * * * every time "some evidence," however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense." *Shane* at 633, 590 N.E.2d 272. The same logic applies to a trial court's decision to charge a jury concerning an inferior degree of an offense.

{¶86}   In concluding that the trial court did not err in refusing to give a jury instruction on voluntarily manslaughter, we find that the evidence presented did not reasonably support both an acquittal on the crime charged and a conviction for voluntary manslaughter.

### *Involuntary Manslaughter*

{¶87}   Linzy next contends that he was entitled to an instruction on the lesser offense of involuntary manslaughter.

{¶88}   Involuntary manslaughter is a lesser-included offense of felony murder. *State v. Tucker*, 12th Dist. No. CA2010–10–263, 2012–Ohio–139, ¶ 32, *citing State v. Thomas*, 6th Dist. No. L–06–1331, 2009–Ohio–1748, *citing State v. Lynch*, 98 Ohio St.3d 514, 2003–Ohio–2284; *State v. Watson*, Cuyahoga App. No. 87281, 2006–Ohio–5738

{¶89}   Pursuant to R.C. 2903.04(A), a person commits involuntary manslaughter when he causes the death of another as proximate result of committing

or attempting to commit a felony. Linzy does not specify a felony other than felonious assault.

**{¶90}** As previously noted, by his own admission Linzy intended to shoot Hall. Linzy's admission alone indicates that he was aware that his conduct would probably cause the certain result of harm to Hall. The intent to kill is presumed where the state proves the required intent to commit the underlying felony, thereby punishing those felonious assaults that end in death as murder. *State v. Everett*, 5th Dist. No. 2011CA00115, 2012-Ohio-2740, ¶66, citing *State v. Mays,* 2nd Dist. No. 24168, 2012–Ohio–838, ¶ 10.

**{¶91}** In concluding that the trial court did not err in refusing to give an instruction on involuntary manslaughter, we determined that the evidence presented did not reasonably support a conclusion that Linzy did not intend to kill Hall. Specifically, the fact that Linzy fired at close range, with pinpoint accuracy (hitting Hall with three of three shots), toward a known inhabited area (the last shot after passing through Hall lodged in a wall inside the bar), belied Linzy's assertion that he did not intend to kill Hall. Likewise, in *Campbell,* the Supreme Court of Ohio determined that the number (four) and location (vital areas) of the victim's wounds refuted the defendant's contention that he did not intend to kill his victim, but stabbed him "reflexively." *Campbell,* 69 Ohio St.3d at 48, 630 N.E.2d 339. Thus, the Supreme Court of Ohio in *Campbell* concluded that the trial court did not err in refusing to instruct the jury on involuntary manslaughter.

***Reckless Homicide***

**{¶92}**   Linzy further contends that the trial court abused its discretion by refusing to instruct the jury on reckless homicide.

**{¶93}**   A person commits reckless homicide when he recklessly causes the death of another. R.C. 2903.041(A). The difference between felony murder and reckless homicide is in the requisite mens rea. As noted earlier, one acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person acts recklessly, however, when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. R.C. 2901.22(C). *State v. Collins,* 8th Dist. No. 95415, 2011-Ohio-32412, ¶41.

**{¶94}**   Generally, courts presume that people intend the natural, reasonable and probable consequences of their voluntary actions. *State v. Williams*, 74 Ohio St. 3d 569, 574, 660 N.E.2d 724(1996); *Thomas* at 217, 533 N.E. 2d 286; *State v. Wright*, 4th Dist. No. 01CA2781, 2002-Ohio-2781 at ¶24.

**{¶95}**   Evidence that the defendant did not appear to be aiming his weapon at any specific person could support an inference that the defendant fired randomly or aimlessly to support a jury verdict finding the defendant guilty of reckless homicide instead of murder. *State v. Wright*, supra at ¶34. (Citing *Young v. Indiana* (Ind.1998), 699 N.E. 2d 252).

**{¶96}**   As previously noted, by his own admission Linzy intended to shoot Hall. Linzy's admission alone indicates that he was aware that his conduct would probably cause the certain result of harm to Hall. The intent to kill is presumed where the state

proves the required intent to commit the underlying felony, thereby punishing those felonious assaults which end in death as murder. *State v. Everett*, 5th Dist. No. 2011CA00115, 2012-Ohio-2740, ¶66, citing *State v. Mays,* 2nd Dist. No. 24168, 2012–Ohio–838, ¶ 10.

**{¶97}** Linzy offers no explanation, nor does he point specifically to the record in support of his claim that he was entitled to a jury instruction on reckless homicide. Because Linzy fails to properly reference portions of the record, supporting his claim to entitled him to have the jury instructed on reckless homicide, Linzy cannot demonstrate the claimed error. See *Daniels v. Santic,* 11th Dist. No.  No. 2004-G-2570, 2005-Ohio-1101, ¶ 13-15. See, also, App.R. 12(A)(2) and 16(A)(7); *Graham v. City of Findlay Police Dept.* 3rd Dist. No. No. 5-01-32, 2012-Ohio-1215 (stating, "[t]his court is not obliged to search the record for some evidence of claimed error. * * * Rather, an appellant must tell the appellate court specifically where the trial court's alleged errors may be located in the transcript"); *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees,* 108 Ohio St.3d 288, 2006-Ohio-903, ¶ 13; *State ex rel. Petro v. Gold,* 166 Ohio App.3d 371, 2006-Ohio-943(10th Dist.), ¶ 94, *appeal not allowed*, 110 Ohio St.3d 1439, 2006-Ohio-3862, *reconsideration denied*, 111 Ohio St.3d 1418, 2006- Ohio-5083; *Porter v. Keefe,* 6th Dist.No. E-02-018, 2003-Ohio-7267, ¶ 109-113.

**{¶98}** In the case at bar, Linzy shot Hall twice at close range. He then fired a third time as Hall was backing away attempting to get inside the bar. Linzy made the unsolicited statement to Officer Soehnlen, "I did not want that man to die, but he

shouldn't have put his fucking hands on me. You live by the sword, you die by it." By his own admission, Linzy intended to shoot Hall.

**{¶99}** Linzy was not entitled to a reckless homicide instruction because there is no reasonable view of the evidence that would have allowed the jury to reject the felony murder charge and find him guilty of reckless homicide.

**{¶100}** Linzy's fifth assignment of error is overruled.

### *Conclusion*

**{¶101}** Linzy's first, second, third, fourth, fifth and sixth assignments of error are overruled in their entirety and the judgment of the Court of Common Pleas, of Richland County, Ohio, is affirmed.

By Gwin, J.,

Delaney, P.J., and

Wise, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY

_____
HON. JOHN W. WISE

WSG:clw 0306

[Cite as *State v. Linzy*, 2013-Ohio-1129.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| CAREES LINZY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2012-CA-33 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, of Richland County, Ohio, is affirmed.  Costs to appellant.

_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY


_____
HON. JOHN W. WISE