[Cite as *State v. Seabeck*, 2011-Ohio-3942.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25190 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| STEVEN E. SEABECK | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 09 08 2417 |

DECISION AND JOURNAL ENTRY

Dated: August 10, 2011

BELFANCE, Presiding Judge.

{¶1} Appellant, Steven E. Seabeck, appeals his convictions from the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} The charges in this case stem from a burglary and theft at the home of Chris Capece in Hudson, Ohio, and the arrest of Mr. Seabeck in connection with that theft and burglary. Mr. Capece awoke around 3:30 a.m. on January 24, 2009, because he heard noise in his home. He could not discern any specific intruder but chased the intruder, or intruders, from the home. From his kitchen, he saw a dark van in his driveway with its tires spinning on the ice. After a few minutes, the van was able to drive away. After police arrived on the scene, Mr. Capece discovered that numerous items had been stolen and that some electronic equipment had been dislodged and stacked in the living room as if ready to be removed from the home. Three bottles of liquor had been removed from the kitchen cabinet and were left on the kitchen counter.

One bottle had bloody fingerprints on it. Fresh blood was discovered as well. Police took samples of the blood and took the liquor bottle for fingerprint analysis.

{¶3} An investigation ensued, and Mr. Seabeck's fingerprints matched those on the liquor bottle. A warrant was then issued for the arrest of Mr. Seabeck in connection with the burglary and theft. In July 2009, Mr. Seabeck was arrested and an incident giving rise to a menacing charge occurred while a police officer was transferring Mr. Seabeck to the Summit County jail.

{¶4} In August 2009, Mr. Seabeck was indicted on one count of burglary in violation of R.C. 2911.12(A)(1), a second-degree felony; one count of theft in violation of R.C. 2913.02(A)(1), a fourth-degree felony; and one count of menacing in violation of R.C. 2903.22, a fourth-degree misdemeanor. The matter proceeded to a jury trial in November 2009. At the conclusion of the State's case, Mr. Seabeck made a Crim.R. 29(A) motion for acquittal. The trial court overruled the motion. The jury found Mr. Seabeck guilty on all counts. The court imposed a total sentence of six years of incarceration, followed by a three-year period of mandatory post-release control.

{¶5} Mr. Seabeck now appeals, presenting two assignments of error. We rearrange the assignments to facilitate review.

II.

ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED IN FAILING TO GRANT MR. SEABECK'S CRIMINAL RULE 29 MOTION TO DISMISS THE CHARGES FOLLOWING THE STATE'S CASE AND AT THE CONCLUSION OF THE EVIDENCE."

{¶6} In his second assignment of error, Mr. Seabeck argues that the court erred in denying his Crim.R. 29(A) motion at the conclusion of the State's case, which was the

conclusion of the evidence. Denial of a Crim.R. 29(A) motion to acquit is reviewed under a sufficiency of the evidence standard. See *State v. Bridgeman* (1978), 55 Ohio St.2d 261, syllabus. Whether a conviction is based on sufficient evidence is a question of law that this Court reviews de novo. *State v. Williams*, 9th Dist. No. 24731, 2009-Ohio-6955, at ¶18, citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. The relevant inquiry is whether the State has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins*, 78 Ohio St.3d at 390 (Cook, J. concurring). When a defendant challenges sufficiency of the evidence, we do not evaluate credibility, rather, the Court must:

> "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.

**Burglary and Theft**

{¶7} R.C. 2911.12(A)(1), the statute prohibiting burglary, provides that "[n]o person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure * * * when another person other than an accomplice is present, with purpose to commit * * * any criminal offense[.]" Trespass is committed when one "[k]nowingly enter[s] or remain[s] on the land or premises of another[ ]" without permission to do so. R.C. 2911.21(A)(1). R.C. 2913.02(A)(1), the statute prohibiting theft provides that "[n]o person, with purpose to deprive the owner of property * * * , shall knowingly obtain or exert control over * * * the property * * * [w]ithout the consent of the owner[.]" In order to obtain a conviction, the State must also prove the identity of the perpetrator beyond a reasonable doubt. See *State v. Jones*, 9th Dist. No. 24776, 2010-Ohio-351, at ¶8.

{¶8} Mr. Capece resides with Ms. Ruland in a large, 6,500 square foot century home. The home is divided into two separate homes, a front home and a back home. The basement is not divided by any walls and spans the entire length of the home. Mr. Capece resides only in the back home. He hired Cliff Milbry to perform renovations in the front home. Mr. Milbry performed the work with the assistance of a small crew, which included Mr. Seabeck. Mr. Capece told the workers that they were not to go into the back home where he lived. Notwithstanding, on one occasion, Ms. Ruland observed Mr. Seabeck "snooping around."

{¶9} On January 23, 2009, Mr. Milbry and his crew were working at the home. Mr. Capece was speaking to Mr. Milbry and told him to make sure to lock up the home that evening. He also told Mr. Milbry that he was planning to go out of town that evening. Mr. Capece observed that Mr. Seabeck was present when he was speaking to Mr. Milbry. He indicated that he believed that Mr. Seabeck had overheard his conversation with Mr. Milbry and thought it strange when Mr. Seabeck stated that he had not been eavesdropping. When the workers finished for the day, Mr. Seabeck and another worker were the last to leave the home.

{¶10} Mr. Capece decided not to go out of town and, instead, played cards with friends. He telephoned Ms. Ruland, who was already home, to let her know he was coming home and arrived home around 1:15 a.m. Upon arrival, Mr. Capece did not notice anything unusual. After going to bed, Mr. Capece woke up after hearing squeaking on the steps and discovered that someone was in the home. He called out to the intruder to get out of the home and began to chase what he described as "shadows." Upon arriving in the kitchen, he observed a van attempting to leave but its wheels were spinning on the ice. Mr. Capece did not go outside because he was not fully dressed and there was snow outside. When police arrived, Mr. Capece saw that all the lights had been turned on and the front door was wide open. Laptop computers, a

large screen TV, Direct TV boxes, DVD players, golf clubs, and some other electronic items were missing. In the living room, he observed that a TV, DVD player and stereo unit had been dislodged and stacked on the floor. He also saw that three knives were missing from the wooden knife holder located in the kitchen. There were three bottles of liquor on the kitchen counter, one of which had bloody fingerprints on it. Mr. Capece observed blood on the tiles in the basement where the electronic equipment had been taken and blood by the equipment in the living room. He also noticed blood on the stairwell wall leading to the upstairs bedrooms, and blood on a bedroom door handle. Some of the blood was still fresh and wet at 4:15 a.m. Mr. Capece stated that there was no blood or stacked VCR equipment in the living room before he went to bed and that he would have noticed it if it had been there.

{¶11} At trial, the State presented the liquor bottle taken from the scene. It presented evidence from BCI witnesses that the bottle retrieved from the kitchen matched Mr. Seabeck's fingerprints and that the DNA in the blood samples was consistent with Mr. Seabeck's DNA.

{¶12} In order to obtain a conviction, the state must prove the identity of the perpetrator beyond a reasonable doubt. *Jones* at ¶8. The identity of a perpetrator may be established by direct or circumstantial evidence. Id. Mr. Seabeck argues that there was insufficient evidence that he committed burglary or theft. In particular, he argues that, because he was working in the home and no one witnessed his presence during the break-in, the State did not demonstrate that he trespassed in the home by force, stealth or deception. In addition, he argues that there was no direct evidence that he stole any of the items from the home and that the stolen items were never linked to him.

{¶13} Mr. Seabeck essentially argues that, because the state did not present direct evidence that he was the perpetrator, there was insufficient evidence that he committed the

burglary or theft. However, the State presented sufficient circumstantial evidence from which a rational trier of fact could have found that he committed the offenses beyond a reasonable doubt. Although Mr. Seabeck presents an alternative theory as to why his blood and fingerprints were in the home, that argument does not address the sufficiency of the evidence; instead, that argument concerns whether the verdict was against the manifest weight of the evidence. Accordingly, it will not be addressed within this assignment of error. The State presented evidence that Mr. Seabeck had access to the home and was the last person to leave upon finishing work for the day. The State also presented testimony that Mr. Seabeck was aware that Mr. Capece was planning to go out of town that evening. Further, there was evidence of Mr. Seabeck's physical presence in the home at a point in time after Mr. Capece had gone to bed. Mr. Seabeck's fingerprint matched the bloody fingerprint on the liquor bottle that had been removed from the kitchen cabinet. In addition, the DNA taken from the fresh blood removed from the scene was consistent with Mr. Seabeck's DNA and was found in the areas of the home where items were taken and up the stairs and on the bedroom door where Mr. Capece heard the noise that woke him up. Mr. Capece also testified that the blood and disarray in the living room were not present before he went to bed and that he would have seen it if it had been present before he went to bed. Thus, in viewing the evidence in a light most favorable to the State, a reasonable trier of fact could have found Mr. Seabeck guilty of burglary and theft.

**Menacing**

{¶14} Mr. Seabeck also asserts that the State has not provided sufficient evidence to prove that he committed the crime of menacing. R.C. 2903.22, the statute prohibiting menacing, states that "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person * * * of the other person[.]" R.C. 2903.22(A).

{¶15} Mr. Seabeck's menacing conviction stems from an incident that occurred after he was arrested for intoxication by an Akron police officer in July 2009. The officer contacted the Hudson police due to the outstanding warrant for Mr. Seabeck's arrest in connection with the burglary and theft. Officer Matt Price took custody of Mr. Seabeck from the Akron Police. Officer Price testified that Mr. Seabeck was intoxicated and "quite angry." He also stated: "I didn't feel comfortable in taking his handcuffs off[.]" After Mr. Seabeck tried to slide his restraints around to the front, Officer Price ended the booking process. Mr. Seabeck again attempted to slide his restraints to the front while Officer Price was transporting him to the Summit County Jail, and Officer Price had to pull over on the highway because Mr. Seabeck's actions created a "safety issue." Officer Price testified that he was "mostly [concerned] for [his] own safety." Mr. Seabeck yelled and swore at Officer Price. Officer Price continued to the jail.

{¶16} As Officer Price was pulling into the jail, Mr. Seabeck said, "When I beat this, I am going to make sure that I come out to Hudson and see you." Officer Price testified that, "especially with the handcuffs and everything, [he] took that pretty much as a threat." When asked if the statement caused Officer Price to believe that Mr. Seabeck was going to cause Officer Price physical harm, Officer Price responded, "I treat that as a threat, absolutely. If somebody is going to threaten me, I take it seriously; so, yes, I treated it that way at this point."

{¶17} Mr. Seabeck argues that the State failed to present sufficient evidence of menacing. Mr. Seabeck has not identified which element of the crime was not met. It appears that Mr. Seabeck is arguing that the State provided insufficient evidence to prove that Officer Price believed that Mr. Seabeck would cause physical harm to him. Mr. Seabeck points to evidence that he was extremely intoxicated and that Officer Price was a much larger man. However, these arguments concern the weight of the evidence rather than the sufficiency. The

State presented evidence that Mr. Seabeck knowingly caused Officer Price to believe that Mr. Seabeck would cause physical harm to him. Accordingly, there was sufficient evidence from which a reasonable trier of fact could determine that Mr. Seabeck committed the crime of menacing.

{¶18} Mr. Seabeck's second assignment of error is overruled.

ASSIGNMENT OF ERROR I

"MR. SEABECK'S CONVICTIONS FOR BURGLARY AND GRAND (sic) THEFT FROM A RESIDENCE IN HUDSON, AND THE CONVICTION FOR MENACING OF A HUDSON POLICE OFFICER, WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶19} In his first assignment of error, Mr. Seabeck argues that his convictions for burglary, theft, and menacing were against the manifest weight of the evidence. We disagree.

{¶20} Unlike a challenge of sufficiency of the evidence, when considering a manifest weight challenge, the Court must consider whether the State met its burden of persuasion at trial. *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring). In order to do this:

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

The power to grant a new trial is discretionary and should only be exercised in exceptional circumstances "where the evidence weighs heavily against the conviction[s]." Id. We cannot conclude that the jury "clearly lost its way[.]" Id.

{¶21} With respect to the burglary and theft offenses, Mr. Seabeck relies upon the same argument raised in his sufficiency challenge, namely that the evidence does not prove that he was the individual who committed the theft and burglary. Mr. Seabeck contends that multiple

individuals had access to the home at the time of the burglary and theft, that the blood and fingerprints found at the scene do not indicate that Mr. Seabeck committed the burglary or theft, and that neither the van used in the crime nor the stolen items were ever linked to him. Additionally, Mr. Seabeck asserts that the Hudson police failed to investigate any other suspects in connection with the crimes, and thus, his convictions for burglary and theft were against the manifest weight of the evidence.

{¶22} Officer Price responded to Mr. Capece's 9-1-1 call. When he arrived at the scene, he found the front door of Mr. Capece's home unlocked. Because the front door to the house was unlocked, Mr. Seabeck argues that anybody could have entered the house and committed the theft. However, the evidence indicates that Mr. Seabeck was the individual in Mr. Capece's home at the time of the crimes. Wet blood and fingerprints collected from the house right after the crime were matched to Mr. Seabeck. Mr. Capece testified that Mr. Seabeck had reason to know where the liquor was located because Mr. Seabeck had been caught "snooping around" near the liquor cabinet. Mr. Capece indicated that he believed that Mr. Seabeck had overheard a conversation between him and Mr. Milbry during the day prior to the incident. During that conversation, Mr. Capece told Mr. Milbry that he would be going out of town that evening. There is no evidence to indicate that anybody other than Mr. Capece, Ms. Ruland, and Mr. Seabeck was in the house around the time that the crimes were committed.

{¶23} Although Mr. Seabeck presents an alternative explanation for how his blood and fingerprints ended up in the home, the jury in weighing the evidence could have reasonably determined that this explanation was not credible and was inconsistent with the physical evidence. Officer Jeantet, a Hudson detective assigned to investigate, interviewed Mr. Seabeck after he was arrested and testified that Mr. Seabeck told her that he had cut his hand while

working in the house the day before the break-in. He told her that he went inside the house after cutting his hand, but also told her that he did not remember where he went in the house. He further told her that he did not know where on his hands the cut had been. John (Jack) Besozzi was working with Mr. Seabeck on the day that Mr. Seabeck stated that he cut his hand. Although Mr. Besozzi conceded that he was not paying attention and would not always know if a co-worker received an injury, he was not aware of any injury received by Mr. Seabeck and did not see any blood in Mr. Capece's house prior to leaving the premises with Mr. Seabeck.

{¶24} Although neither the van nor Mr. Capece's missing items were ever linked to Mr. Seabeck, Mr. Seabeck has nevertheless been linked to the scene of the crimes and items out of place at the scene. Mr. Seabeck was not arrested until approximately six months after the crimes, which would have given him sufficient time to dispose of items taken from Mr. Capece's home. Further, the items taken were never linked to anyone else either. As to the van, Mr. Seabeck could have borrowed the van or had somebody else drive him to the scene. Therefore, this evidence is not inconsistent with Mr. Seabeck having committed the crimes.

{¶25} Lastly, Mr. Seabeck argues that his conviction is against the manifest weight of the evidence because the Hudson police did not investigate any other suspects in connection with the crimes. However, Officer Price interviewed Mr. Milbry and all of the other individuals who had been working in Mr. Capece's home in the week prior to the burglary and theft. All of the individuals provided Mr. Price with alibis and DNA samples, and none of the DNA samples matched the DNA collected from the scene. There was no indication that any of the individuals were in Mr. Capece's home at the time of or participated in any way in the theft and burglary.

{¶26} Detective Jeantet also investigated an individual with prior burglary convictions known to have been living in Hudson at the time of the burglary and theft. The fingerprints of

the individual were compared with the prints found at the scene of the crimes, and no match was made. Nor was this suspect linked to the van seen at the scene.

{¶27} With respect to the menacing conviction, Mr. Seabeck again argues that his conviction for menacing is against the manifest weight of the evidence because he was highly intoxicated when the allegedly threatening statement was made, because he did not attempt to contact Officer Price between the time that he was released from jail on bail and the day of the trial, and Officer Price is larger in size than him. In light of these circumstances, Mr. Seabeck essentially questions whether Officer Price's testimony that he believed Mr. Seabeck would cause harm to him is credible. However, the jury had the opportunity to observe Officer Price's demeanor during his testimony and weigh his credibility. See *State v. DeHass* (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. After independently reviewing the evidence, we cannot conclude that the jury was unreasonable in its credibility determinations. See *State v. Singer,* 9th Dist. No. 25321, 2011-Ohio-917, at ¶12. If the jury believed Officer Price's testimony and version of events, it could have reasonably concluded that Mr. Seabeck committed the offense of menacing.

{¶28} Accordingly, upon thorough review of the record, we do not conclude that "in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Otten* at 340. Mr. Seabeck's first assignment of error is overruled.

III.

{¶29} In light of the foregoing, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
DICKINSON, J.
CONCUR

APPEARANCES:

LEE A. SCHAFFER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.