[Cite as *State v. Fares*, 2016-Ohio-8555.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 15 MA 0201 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| THOMAS FARES, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:       Criminal Appeal from the Mahoning County Court # 4 of Mahoning County, Ohio
Case No. 2015-CRB-371

JUDGMENT:       Affirmed.

APPEARANCES:

For Plaintiff-Appellee:       Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman St., 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant:       Atty. Lynn Maro
Maro & Schoenike Co.
7081 West Boulevard, Suite 4
Youngstown, Ohio 44512

JUDGES:

Hon. Carol Ann Robb
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: December 30, 2016

[Cite as *State v. Fares*, 2016-Ohio-8555.]
ROBB, J.

{¶1} Defendant-Appellant Thomas Fares appeals the decision of Mahoning County Court # 4 finding him guilty of aggravated menacing and sentencing him to 180 days in jail with 170 days suspended. Three issues are raised in this appeal. The first issue is whether the state presented sufficient evidence to support the conviction for aggravated menacing. The second issue is whether the verdict is against the manifest weight of the evidence. The last issue is whether a silent record indicates the trial court failed to consider the statutory factors for misdemeanor sentencing. All assignments of error lack merit. The conviction and sentence are affirmed.

Statement of the Facts and Case

{¶2} On the afternoon of May 8, 2015 an altercation occurred in the parking lot of Walmart in Austintown, Ohio between Appellant and Brandon Bucci. The altercation arose from a driving incident; Bucci was driving his Volkswagen on Mahoning Avenue and allegedly almost hit Appellant who was riding his motorcycle. Shortly after the driving incident, Bucci pulled into the Walmart parking lot. Appellant also pulled into the Walmart parking lot. Video surveillance showed Appellant rode his motorcycle over to where Bucci parked his car.

{¶3} Two witnesses of the altercation testified that after Appellant rode his motorcycle over to Bucci and Bucci's passenger, Quinn Ward, the three argued loudly. Both witnesses saw Appellant pull out his gun from his tank bag during the altercation. Appellant admitted to displaying his weapon during the altercation.[1] One of the witnesses called the police; the witness did not inform Appellant, Ward, or Bucci the police had been called.

{¶4} Appellant left prior to the police arriving at the scene. The police took statements from the witnesses, Bucci, and Ward. The Austintown Police Department called the Jackson Township Police Department and informed them to be on the

---

[1]Appellant had a valid concealed carry permit.

lookout for an individual on a motorcycle. Officer Robert Schaffer, a Jackson Township Police Officer, followed Appellant to his driveway and spoke to him. Appellant admitted to "pulling a gun on a couple of kids" in the Austintown Walmart parking lot. He told the officer the kids tried to run him off the road. Officer Greg McGlynn of the Austintown Police Department arrived and took Appellant into custody. Appellant told the officer the kids almost ran him off the road, and he was just going to give them a piece of his mind.

{¶5} Appellant was charged with two counts of aggravated menacing, violations of R.C. 2903.21(A), first-degree misdemeanors. 5/11/15 Complaint.

{¶6} On July 15, 2015, the case proceeded to a bench trial. Following the state's presentation of evidence, the state dismissed the aggravated menacing charge listing Ward as the victim. Ward did not testify at trial, and as such, the state was unable to prove the elements of the offense as it pertained to Ward. Appellant moved for acquittal, which was denied.

{¶7} The case proceeded with Appellant's case-in-chief; Appellant testified on his own behalf. Following his testimony, the defense rested and renewed its motion for acquittal, which was again denied. The trial court found Appellant guilty.

{¶8} A sentencing hearing was held on October 28, 2015. Appellant was sentenced to 180 days in jail, 170 days were suspended, and Appellant was ordered to complete 12 months of probation. He was fined $100 and ordered to pay court costs.

{¶9} Appellant timely appealed. Appellant moved for a stay of execution of his sentence, which this court granted. 11/6/15 J.E.

<u>First Assignment of Error</u>

"Appellant's conviction for aggravated menacing is not supported by sufficient evidence, and the trial court erred in overruling the motions for acquittal pursuant to Ohio Crim.R. 29."

{¶10} A conviction based upon insufficient evidence is a denial of due process. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), citing *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211 (1982). Sufficiency of the

evidence is a question of law dealing with legal adequacy of the evidence; it is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *Thompkins* at 386; *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997).

**{¶11}** In viewing a sufficiency of the evidence argument, the evidence and all rational inferences to be drawn from the evidence are evaluated in the light most favorable to the prosecution. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). A conviction cannot be reversed on grounds of sufficiency unless the reviewing court determines no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Id.* at 138. The court does not examine the credibility of the witnesses, nor does it weigh the evidence in this process. *Goff* at 139.

**{¶12}** Appellant was charged with and convicted of aggravated menacing, which is defined in R.C. 2903.21(A) as:

> No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family. In addition to any other basis for the other person's belief that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family, the other person's belief may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

R.C. 2903.21(A).

**{¶13}** Appellant argues the state failed to present legally sufficient evidence to prove Bucci believed Appellant intended to cause serious physical harm to him.

**{¶14}** Serious physical harm to a person is defined as:

> (5) "Serious physical harm to persons" means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

**{¶15}** There was sufficient evidence in this case to prove Bucci believed Appellant intended to cause him serious physical harm. At trial Bucci testified numerous times he was scared, he feared for his life and his brother's life, and he thought he would be shot:

A. I did see him coming. I was out of the car. He came back, drove his motorcycle at me pretty fast – probably, maybe 40 miles per hour or even faster – stops short of me, and then he started talking. And I can't remember exactly what he said initially; but, at some point – and pulled out the gun and told me that he would shoot me and my brother and put two through the windshield.

At first I was very scared, but then after a while, like it was to a point where I started [sic] get more angry than I was scared because he was telling me he was going to kill me and my brother, in broad daylight, at Walmart. No remorse. I mean, like we didn't – like our lives were worth nothing.

\* \* \*

A. That's how I felt.  He said he'd put two through the windshield, and he didn't give a f\*\*k.  Exact words, verbatim.

Q.  Did you feel at any time when that firearm was pointing at you that he would cause you some serious physical harm.

A. Yeah.  Absolutely.  Absolutely.  I felt that way in traffic.  That's why I put my hand up and said I'm sorry.  Absolutely.

\* \* \*

Q.  All right.  There is a video, and it appear as if you – after you checked for your cell phone, that you came back, approached – Mr. Fares is on the motorcycle – that you approached him. Were you still in fear of being –

A. Of being shot?  I mean, I was asking him to leave us alone.  I was. But I was – I mean, the whole situation I was scared of being shot.

But, I mean, at some point moved from fear to anger.  I mean, I'm like, this man is still here, pointing a gun at me.  I've done absolutely nothing to him.  I haven't hurt him, haven't' hurt his motorcycle, nothing, and he's still here, pointing his gun at me and my brother.

So, I mean yes, I did.  I got very frustrated.  I was – I mean, if he would have put the gun down, I would have fought him.

\* \* \*

Q.  So then you weren't afraid that he was going to shoot you?

A. No.  Absolutely.  100 percent I was afraid, but I mean, I'm not going to move.  I'm just going to stand there.

Trial Tr. 89-92, 102.

{¶16} Despite Appellant's insistence, this case is not akin to the Eighth Appellate Court's *Walton Hills* decision. *Walton Hills* dealt with a road rage incident. The victim testified Tate came "flying up on" her. *Walton Hills v. Tate*, 60 N.E.2d.611, 2016-Ohio-697, ¶ 14 (8th Dist.) Tate exchanged words with the victim and her boyfriend; she testified he was "screaming pretty provocative and mean things at me." *Id.* After the victim told Tate she was going to call the police, Tate went back to his car and grabbed a tire thumper, which looks like a baseball bat. *Id.* He hit the car with the tire thumper and stuck the tire thumper through the window as if he was going to hit the passenger. *Id.* The tire thumper caught the window and caused the window to pull off of its track. *Id.* The victim drove away. *Id.*

{¶17} Despite evidence of aggressive behavior by the defendant, the Eighth Appellate District found the evidence was insufficient to support a conviction for aggravated menacing. *Id.* at ¶ 15. The court reasoned, "no testimony was adduced that established that [the victim] believed she would suffer serious physical harm at the hands of Tate. Tate's actions while foreboding, do not constitute a threat of serious physical harm." *Id.* The victim never testified she believed she "was in danger of serious physical harm from Tate." *Id.*

{¶18} Bucci's testimony clearly establishes he was afraid he would be shot, which means he believed he was in danger of serious physical harm from Appellant. Therefore, this case is not akin to *Walton Hills*.

{¶19} Appellant also cites another Eighth Appellate decision, *Greer*, for the proposition subjective belief of the victim can be assessed based upon the victim's actions. Appellant argues Bucci's action of not retreating when Appellant displayed his gun shows Bucci was not afraid he would suffer serious physical harm at Appellant's hands.

{¶20} *Greer* is another road rage case. The victim testified during the road rage incident Greer "pops a gun out," which the victim was not sure was real. *Garfield Hts. v. Greer*, 8th Dist. No. 87078, 2006-Ohio-5936, ¶ 7. In response to that incident, the victim slowed his vehicle and wrote down the license plate number of

Greer's car. *Id.* The victim did not testify the gun was pointed at him or that he had a subjective belief Greer would cause him serious physical harm. *Id.* The state argued the victim's retreat from the situation created an inference the victim subjectively believed serious physical harm would ensue. *Id.* at ¶ 8. The court acknowledged retreat from a threatening situation can be circumstantial evidence of a belief the offender will cause serious physical harm to the person. *Id.* at ¶ 9. However, it found the evidence did not demonstrate the victim was scared or rattled, and thus, there was no circumstantial evidence of a belief the offender would cause serious physical harm. The court reasoned:

> Here, Greer did nothing more than brandish a gun that even the victim questioned as being real. There was no evidence that he pointed the gun at the victim, or took any other action to make the victim believe that serious physical harm would ensue. Rather than retreat from the scene, the victim slowed down so as to write down Greer's license number. And once the victim returned to his house, he admittedly forgot to tell the police about Greer's gun during his initial telephone call. These are not the actions of a person who had a subjective belief that Greer was going to cause him serious physical harm.

*Id.* at ¶ 10.

{¶21} Admittedly, there is support for the proposition subjective belief of the victim can be assessed based upon the victim's actions for purposes of a sufficiency review. *See id.* That is especially the case when the victim does not testify he was afraid of serious physical harm. *See id.*

{¶22} However, in the matter at hand, we have ample testimony from Bucci that he was afraid of being shot. Bucci even testified Appellant said he was going to shoot Bucci and his brother. The issue of whether Bucci's actions coincided with his avowed fear for his life is a credibility issue, not a sufficiency issue. Appellant's argument regarding Bucci's failure to retreat is an argument concerning the manifest weight of the evidence.

**{¶23}** In conclusion, when viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to prove Bucci believed Appellant intended to cause serious physical harm. This assignment of error is meritless.

### Second Assignment of Error

"Appellant's conviction and sentence violate the Fourteenth Amendment to the United States Constitution and Article I, §16 of the Ohio Constitution as the conviction was against the manifest weight of the evidence."

**{¶24}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

**{¶25}** Granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of fact who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996).

**{¶26}** Appellant argues Bucci is not credible. This argument is related to the argument presented under the sufficiency of the evidence assignment of error. Appellant contends the video tape indicates Bucci was the aggressor and Appellant only removed his gun from his tank bag after Ward and Bucci came towards him.

**{¶27}** Many facts in this case are undisputed. The dispute between Appellant and Bucci arose at a stop light on Mahoning Avenue. Bucci pulled into Walmart

parking lot, parked his car, and got out. Video surveillance then shows Appellant driving across Walmart parking lot at faster than normal speed toward Bucci, Ward, and Bucci's vehicle. Appellant admitted he drove over to Bucci to give Bucci a "piece of his mind." During the "conversation" Appellant pulled his gun out of the motorcycle's tank bag. Two witnesses to the event saw the gun and called the police. Bucci also testified he saw the gun. Video surveillance shows, at some point during this "conversation," Bucci came toward Appellant. Ward had to hold Bucci back. Bucci admitted he was aggressive. It was after that action, Appellant left the scene.

{¶28} It is unclear what was being said during the altercation; the video surveillance does not have audio. Two witnesses testified Appellant, Bucci, and Ward were arguing loudly.

{¶29} The video surveillance does show Bucci going to his trunk for something. Appellant testified he was afraid it was a weapon and that is why he pulled out his gun. Bucci testified he was looking for a cell phone.

{¶30} The video surveillance shows Appellant did not get off his motorcycle during the altercation. The video also indicates Bucci did not at any point retreat from the altercation, but rather he appeared to get more aggressive.

{¶31} Although there is evidence Bucci was aggressive, such evidence does not necessarily negate or call into question his testimony that he was afraid of being shot and he feared for his and his brother's safety. It is a credibility question. Bucci's testimony explained his thought process:

A. I wasn't okay with being hit [by the motorcycle], but I mean, I wasn't going to move. I just told you, I was going to stand my ground. This man was absolutely wrong to have came at me like that, so I wasn't going to move.

* * *

Q. And did either of you at that point in time decide maybe we should get the heck out of here, this man has a gun?

A. No.

Q. Why?

A. Because, I mean, for the same reason I told you I didn't move when he drove his motorcycle up to me. Why should I move? Because this man has a gun?

Q. So then you weren't afraid that he was going to shoot you?

A. No. Absolutely. 100 percent I was afraid, but I mean, I'm not going to move. I'm just going to stand there.

Trial Tr. 101, 102.

{¶32} This testimony and his position are believable. It is the age old "fight versus flight" dilemma. Some people in the face of fear fight, while others flee. Merely because a person decides to stand their ground does not mean that person does not fear bodily injury. The state presented that position during closing arguments. Trial Tr. 155-156.

{¶33} Considering all the evidence, it a credibility question of whether the trial court believed Bucci was fearful for his safety. The trial court was in the best position to determine credibility, and we decline to second guess it.

{¶34} This assignment of error is meritless.

<u>Third Assignment of Error</u>

"The trial court error [sic] when it failed to consider the statutory factors contained within R.C. 2929.22 before imposing the jail sentence when mitigating factors were present at the sentencing hearing."

{¶35} An appellate court reviews misdemeanor sentences for an abuse of discretion. *State v. Cossack*, 7th Dist. No. 08 MA 161, 2009–Ohio–3327, ¶ 20. In determining the appropriate sentence for a misdemeanor, a trial court is required to consider the factors enumerated in R.C. 2929.22(B)(1). The factors include the nature and circumstances of the offense; the offender's criminal record; whether there is a substantial risk the offender is a danger to others; whether the victim's

youth, age, disability, or other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious; likelihood of recidivism; and offender's military service record including any emotional, mental, or physical injuries that contributed to the offense. R.C. 2929.22(B)(1)(a)-(g). A trial court's failure to consider the R.C. 2929.22 factors amounts to an abuse of discretion. *State v. Rogers*, 11th Dist. Nos. 2009–T–0051 and 2009–T–0052, 2010–Ohio–197, ¶ 11.

**{¶36}** The trial court sentenced Appellant to 180 days, suspended 170, ordered 12 months of probation, and permitted Appellant to serve his sentence on five consecutive weekends. 10/28/15 J.E. The trial court did not reference or discuss any of the R.C. 2929.22(B)(1) factors. Appellant contends the trial court abused its discretion because there is no indication in the record it considered the sentencing factors or the mitigating factors Appellant presented.

**{¶37}** The record in this case is silent. "While it is preferable that the trial court state on the record that it has considered the statutory criteria, R.C. 2929.22(B) does not require the court to do so." *State v. Lundberg*, 2d Dist. No. 2278, 2009–Ohio–1641, ¶ 21. A silent record creates a rebuttable presumption the sentencing court considered the statutory sentencing criteria. *State v. Bodnar*, 7th Dist. No. 12–MA–77, 2013–Ohio–1115, ¶ 22. "When the trial court's sentence is within the statutory limit, a reviewing court will presume that the trial court followed the standards in R.C. 2929.22 absent a showing to the contrary." *Id.* at ¶ 20.

**{¶38}** Aggravated menacing is a first-degree misdemeanor and 180 days is the maximum sentence allowable. R.C. 2903.21(B) (aggravated menacing is a first-degree misdemeanor); R.C. 2929.24(A)(1) (first-degree misdemeanor sentence). Appellant's sentence fell within the applicable range. The record indicates the trial court attempted to make serving the sentence easier on Appellant by offering him the option to serve the sentence only on weekdays or only on weekends. Sentencing Tr. 6. This accommodation demonstrates the trial court considered at least some of the mitigating factors Appellant presented at the sentencing hearing. These would include the fact that Appellant works two shifts and was taking care of his elderly mother. Sentencing Tr. 5-6. Furthermore, there is nothing in the sentencing

transcript or the sentencing entry affirmatively showing the trial court did not consider the appropriate factors in R.C. 2929.22. We must presume the trial court followed the sentencing statutes.

**{¶39}** This assignment of error is meritless.

<u>Conclusion</u>

**{¶40}** All three assignments of error lack merit. The conviction and sentence are affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.

DeGenaro, J., concurring opinion.

**{¶41}** While I agree with the majority that Appellant's reliance on *Walton Hills v. Tate*, 60 N.E.3d 611, 2016-Ohio-69 (8th Dist.) is misplaced, I write separately because the majority's analysis of that case warrants some elaboration.

**{¶42}** *Walnut Hills* was a split decision, and the source of disagreement was the victim's belief regarding this element of the offense: whether there was sufficient evidence that the defendant would cause serious physical harm. After answering this question in the negative, the majority proceeded to conclude there was sufficient evidence that the defendant committed menacing. *Id.,* ¶16. The Eighth District reasoned that the distinguishing element between menacing and aggravated menacing is the element of serious physical harm, and as that was the only element the state failed to prove by sufficient evidence, it modified the defendant's conviction to the lesser included offense of menacing. *Id.,* ¶16-17. Conversely, the dissent concluded that based upon the facts that there was sufficient evidence to support an aggravated menacing conviction.

> Construing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the victim subjectively believed Tate would cause serious physical harm to her. Carrying what appeared to be a baseball bat, Tate first approached the victim's side of the vehicle. Finding her window rolled up, he went to the passenger side and attempted to force the bat-like object inside the vehicle, after smacking the vehicle's front fender with it. Only the victim's quick action prevented the object from reaching inside the vehicle. The object was extended toward the passenger's window with such a force that it caused the window to fall off its track when the two collided.

> Tate's rage and use of a potentially very dangerous instrument during the altercation elevated the offense from menacing to

aggravated menacing. Viewed most favorable to the prosecution, the victim's testimony regarding Tate's conduct was sufficient to prove her belief that Tate would cause serious physical harm to her. *See State v. Ayala,* 3d Dist. Union No. 14–13–22, 2014-Ohio-2576, 2014 WL 2700353, *appeal not accepted, State v. Ayala,* 141 Ohio St.3d 1421, 2014-Ohio-5567, 21 N.E.3d 1114, ¶ 30 (the evidence was sufficient to support aggravated menacing during a road rage incident when the defendant made threatening statements while brandishing a knife to the victim).

*Walton Hills,* ¶25-26 (McCormack, J., dissenting)

**{¶43}** Thus, the panel in *Walnut Hills* appears to be unanimous in the conclusion that the victim was fearful; the difference was the level of harm she was fearful of in light of the defendant using a blunt object. The majority in *Walnut Hills* held that the use of the tire thumper created fear, but not of serious physical harm.

**{¶44}** Here, Appellant admitted he displayed the firearm and that he told the police he had "pull[ed] a gun on a couple of kids." Bucci testified that Appellant stated that he would "put two through the windshield" and that at numerous times throughout the encounter was fearful for his and his brother's life. Use of a firearm could result in serious physical harm as contemplated by R.C. 2901.01(A)(5).

**{¶45}** Thus, for these reasons I conclude that *Walnut Hills* supports Appellant's conviction for aggravated assault.