[Cite as *State v. Poland*, 2014-Ohio-5737.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 14CA0003-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MATTHEW A. POLAND | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 13CR0445 |

DECISION AND JOURNAL ENTRY

Dated: December 30, 2014

MOORE, Judge.

{¶1} Defendant-Appellant, Matthew Poland, appeals from his conviction in the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} On the afternoon of June 28, 2013, 13-year-old B.S. was home alone, watching television in her bedroom. Two men came to her front door and knocked in succession, but B.S. ignored their knocks. Approximately 20 to 30 minutes later, B.S. heard a bang and came out of her bedroom to see what had happened. She then heard voices inside the house and tried to hide in her closet. One of the men who had knocked on her front door came into her bedroom before she managed to hide herself. When the man saw her, he asked her whether she had called the police. B.S. said she had not, and the man ran from her room. As the man ran from her room, she heard him say, "We got to go."

**{¶3}** Mr. Poland and his acquaintance, Arthur Morris, soon became the primary suspects in the investigation. Mr. Poland admitted that he and Mr. Morris had knocked on B.S.'s door, but claimed that his knocking was the full extent of his involvement. According to Mr. Poland, Mr. Morris kicked in the man door to B.S.'s garage and later entered her house by himself.

**{¶4}** A grand jury indicted Mr. Poland on one count of burglary, in violation of R.C. 2911.12(A)(1). The case proceeded to a jury trial, and, at the conclusion of the trial, the jury found Mr. Poland guilty. The court sentenced him to two years in prison.

**{¶5}** Mr. Poland now appeals and raises two assignments of error for our review.

## II.

### **ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN DENYING [MR.] MATTHEW POLAND'S RULE 29 MOTION FOR ACQUITTAL AT THE CLOSE OF THE STATE'S CASE IN CHIEF BECAUSE THE STATE DID NOT PRESENT SUFFICIENT EVIDENCE TO ESTABLISH GUILT OF BURGLARY BEYOND A REASONABLE DOUBT.

**{¶6}** In his first assignment of error, Mr. Poland argues that his burglary conviction is based on insufficient evidence and that the trial court erred by denying his Crim.R. 29 motion for acquittal. We disagree.

**{¶7}** "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. *Id.* at 390 (Cook, J.

concurring). In making this determination, an appellate court must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶8} "No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense." R.C. 2911.12(A)(1). "Trespass is committed when one '[k]nowingly enter[s] or remain[s] on the land or premises of another[]' without permission to do so." *State v. Seabeck*, 9th Dist. Summit No. 25190, 2011-Ohio-3942, ¶ 7, quoting R.C. 2911.21(A)(1). "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). Whoever violates R.C. 2911.12(A) is guilty of burglary. R.C. 2911.12(D).

{¶9} It is well-settled that "[a] person need not be the principal offender to be convicted of a crime." *State v. Davis*, 9th Dist. Summit No. 26660, 2013-Ohio-5226, ¶ 11. "R.C. 2923.03(A)(2) provides that '[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense.'" *Id.*, quoting R.C. 2923.03(A)(2). "'To support a conviction for complicity by aiding and abetting

pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.'" *Davis* at ¶ 11, quoting *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "'The criminal intent of the aider and abettor 'can be inferred from the presence, companionship, and conduct of the defendant *before and after the offense is committed*.'" (Emphasis added.) *Davis* at ¶ 11, quoting *State v. Stephens*, 9th Dist. Summit No. 26516, 2013-Ohio-2223, ¶ 18, quoting *State v. Smith*, 9th Dist. Summit No. 25650, 2012-Ohio-794, ¶ 7. "A person who violates R.C. 2923.03(A)(2) is guilty of complicity and 'shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.'" *Davis* at ¶ 11, quoting R.C. 2923.03(F).

{¶10} B.S. testified that she was watching television in her bedroom when she heard someone knocking at the front door and her dog started barking. At the time, B.S. was thirteen and alone in the house. She testified that she walked over to the window of her first-floor bedroom and looked out to see who was at the front door. She observed a strange car parked in the driveway and a man with sunglasses standing at her front door. B.S. watched as the man returned to the car and a second man emerged from the driver's seat. The second man then came to the door, knocked again, and rang the doorbell. B.S. testified that she used her cell phone to call her father and ask what she should do. Her father advised her to ignore the men. Once the men left, B.S. resumed watching television.

{¶11} B.S. testified that, about 20 to 30 minutes later, she heard a bang and her dog began barking again. She walked over to her bedroom doorway and briefly came out of her room to see what had happened. B.S. testified that she then heard footsteps and laughing, so she

ran back in her room, grabbed her cell phone from the bed, and tried to hide in closet. Before she managed to get completely inside the closet, a man came into B.S.'s bedroom with a shovel. She testified that the man had a shirt wrapped around his head and she recognized him as one of the men who had knocked on her front door. The man asked B.S. if she had called the police, and she responded that she had not. According to B.S., the man then ran out of her bedroom and said, "We got to go." After the man ran off, B.S. called the police and her father to let them know what had happened.

{¶12} B.S. admitted that the man who entered her bedroom was the only man that she actually saw in her house. She testified, however, that she thought two men had been in the house. She specified that the laughter she heard sounded like two different pitches of laughter. She also stated that, based on her familiarity with her house, it sounded like the noises she heard were coming from two different people. B.S. testified that the man who was in her room said, "We got to go," as soon as he left her room.

{¶13} Jason S., B.S.'s father, testified that he was at work when the foregoing incident occurred. He testified that, when he left for work that morning, the man door on his attached garage was locked and the lock was intact. When he returned home in response to B.S.'s call, however, the frame and the plate on the door were broken. He testified that he never gave Mr. Poland or Mr. Morris permission to come into his house.

{¶14} Deputy Keith Curtin, a 15-year veteran with the Medina County Sheriff's Office, testified that he responded to a call about a break-in at B.S.'s house. Deputy Curtin located a shovel propped up against the side of the house and observed footprints in the mud near the shovel. Deputy Curtin was able to follow the footprints through the woods next to B.S.'s house, across a field, and onto an access drive where he saw fresh tire marks. He observed that the tire

marks were such that it looked like the driver of the car had "peeled out." He also testified that there were two distinct sets of footprints leading from the access drive to B.S.'s house and from the house back to the access drive.

{¶15} Detective James Cartwright, a 29-year veteran with the Medina County Sheriff's Office, interviewed Mr. Poland after identifying him as a person of interest. He testified that Mr. Poland changed his statement multiple times during the interview. While Mr. Poland initially claimed to have just taken a ride from Cleveland to Garver Road with Mr. Morris, he later said that he and Mr. Morris came to the area of B.S.'s house to try to sell their landscaping services. Next, Mr. Poland claimed that, after knocking on B.S.'s door and returning to Mr. Morris' car, he never left the car. Mr. Poland told Detective Cartwright that he remained in the car listening to music while Mr. Morris returned on foot to B.S.'s house. After Detective Cartwright emphasized that there were two distinct sets of footprints from the car to the house, however, Mr. Poland admitted that he had walked to the house with Mr. Morris. Still, he claimed that he only stood by the house and that Mr. Morris went inside alone. Mr. Poland claimed that he began walking back to the car on his own shortly after Mr. Morris entered the house.

{¶16} Detective Cartwright testified that, after his arrest, Mr. Poland placed a call to his girlfriend from jail. In the phone recording, Mr. Poland told his girlfriend that he was going to say that he only followed Mr. Morris to B.S.'s house because Mr. Morris had intimidated him. Detective Cartwright testified that, during his police station interview, Mr. Poland never mentioned having been intimidated by Mr. Morris. He also agreed, based on his experience, that Mr. Poland and Mr. Morris' behavior in initially knocking on B.S.'s door before leaving and returning was consistent with casing behavior.

{¶17} At trial, the State introduced the recording of Mr. Poland's police station interview. During his interview, Mr. Poland stated that he knocked on the door at B.S.'s house and, when no one answered, returned to Mr. Morris' car. Mr. Morris then exited the car and knocked on the door himself. Mr. Poland stated that, when Mr. Morris did not receive an answer at the door, he immediately walked over to the garage and kicked in the man door. Mr. Morris then got back inside the car and drove them to a nearby access drive. Mr. Poland initially stated that he remained inside the car listening to music while Mr. Morris walked back to the house. He later stated, however, that he walked back to the house with Mr. Morris, but refused to go inside. He claimed that he remained outside and, a short while later, Mr. Morris came running past him. Mr. Poland acknowledged that, after Mr. Morris kicked in the man door to B.S.'s garage, it was clear to him that Mr. Morris intended to steal items from the house.

{¶18} Mr. Poland argues that his conviction for burglary is based on insufficient evidence because the State never set forth any evidence that he forced his way into B.S.'s house for the purpose of committing a criminal offense. He argues that the evidence only tended to show that Mr. Morris forcibly entered B.S.'s house while he stood by. According to Mr. Poland, there was no evidence that he entered the house or intended to take anything from it.

{¶19} The evidence at trial was such that either Mr. Morris or Mr. Poland or both men broke through the man door of B.S.'s garage to gain access to her house. Even if Mr. Morris was the one who kicked in the door, the State set forth evidence that Mr. Poland "'supported, assisted, encouraged, [or] cooperated with * * * [him] in the commission of the crime.'" *Davis*, 2013-Ohio-5226, at ¶ 11, quoting *Johnson*, 93 Ohio St.3d 240 at syllabus. Both Mr. Poland and Mr. Morris knocked on B.S.'s door before leaving, taking the car elsewhere, and returning. Detective Cartwright agreed, based on his experience, that their behavior was consistent with

casing behavior. Moreover, Mr. Poland admitted in his recorded interview that he knew Mr. Morris was returning to the house for the purpose of stealing items from it. Although Mr. Poland claimed that Mr. Morris entered the house alone, the State presented evidence from which a rational trier of fact could have concluded that both men entered the house.

{¶20} B.S. testified that she heard and saw two men knocking on her front door and, 20 to 30 minutes later, heard a bang that caused her dog to start barking. She testified that only one of the men who had knocked on her door came into her room, but that she thought she heard two men laughing and two people moving around in the house. Further, she testified that, immediately after the man ran from her room, he said, "We got to go." Had Mr. Morris been alone in the house, there would have been no reason for him to say, "*We* got to go." (Emphasis added.) Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have determined that both Mr. Morris and Mr. Poland entered B.S.'s house and that Mr. Poland shared Mr. Morris' criminal intent. *See Davis* at ¶ 11 (criminal intent of an aider or abettor "can be inferred from the presence, companionship, and conduct of the defendant before and after the offense is committed"). Thus, we cannot conclude that Mr. Poland's burglary conviction is based on insufficient evidence. Mr. Poland's first assignment of error lacks merit.

## ASSIGNMENT OF ERROR II

[MR.] MATTHEW POLAND'S CONVICTION FOR BURGLARY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶21} In his second assignment of error, Mr. Poland argues that his burglary conviction is against the manifest weight of the evidence. We disagree.

{¶22} When a defendant asserts that his conviction is against the manifest weight of the evidence:

> [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). In making this determination, this Court is mindful that "[e]valuating evidence and assessing credibility are primarily for the trier of fact." (Citations omitted.) *State v. Winchester*, 9th Dist. Summit No. 26652, 2013-Ohio-4683, ¶ 4.

{¶23} Mr. Poland essentially argues that his burglary conviction is a result of improper inference stacking. He argues that the "actual evidence shows only mere association and [his] presence at the scene." He also argues that there was "no evidence of an affirmative step to assist or encourage [Mr.] Morris [to] commit burglary or to participate in it." "[G]iven that the elements of the crime of burglary were not proven beyond a reasonable doubt," he asserts, his conviction is against the manifest weight of the evidence.

{¶24} Much of Mr. Poland's manifest weight argument actually sounds in sufficiency. "A weight challenge tests the persuasiveness of the evidence the State produced while a sufficiency challenge tests the very production of that evidence. An argument that the State failed to prove * * * the elements of a crime is one sounding in sufficiency, not weight." (Internal citation omitted.) *State v. Hayes*, 9th Dist. Summit No. 26388, 2013-Ohio-2429, ¶ 9. Because this assignment of error presents us with a challenge to the weight of the evidence, we must limit our review accordingly.

{¶25} At trial, Mr. Poland testified on his own behalf. He testified that he met Mr. Morris through his girlfriend's cousin and, on the day in question, agreed to take a ride with him to see if anyone might be interested in hiring them as landscapers. Mr. Poland indicated that he

spent some time as a landscaper that summer, but that he did not have any jobs lined up that week. He testified that they drove to Mr. Morris's father's house and, when they discovered that no one was home, decided to go door to door. Mr. Poland acknowledged that he knocked on B.S.'s door and rang the doorbell before returning to the car. Yet, he denied damaging the man door on B.S.'s garage or entering her house. According to Mr. Poland, Mr. Morris immediately kicked in the man door after he knocked on the front door and no one answered. Mr. Poland testified that Mr. Morris then drove them to a nearby access drive and "hid his car in the weeds."

{¶26} Mr. Poland testified that he did not want to return to B.S.'s house with Mr. Morris because he knew Mr. Morris planned on entering the house. According to Mr. Poland, he ultimately agreed to accompany Mr. Morris to the house because he was scared and unfamiliar with the area. He insisted, however, that he only stood outside while Mr. Morris went into the house. He stated that, not long after Mr. Morris entered the house, he started walking back to the car.

{¶27} On cross-examination, Mr. Poland admitted that he lied to the police several times during his interview at the police station. He acknowledged that he and Mr. Morris did not have any landscaping equipment with them that day and that he no longer had a truck to transport any landscaping equipment he owned from Cleveland. Further, he acknowledged that the electricity in his home had been turned off for lack of payment and that he needed money.

{¶28} Having reviewed the record, we cannot conclude that the jury lost its way when it convicted Mr. Poland of burglary. Mr. Poland denied that he ever entered B.S.'s house, but B.S. thought she heard two distinct pitches of laughter and noise she associated with two people in her house. She also heard Mr. Morris say, "We got to go," as he was running from her bedroom. Additionally, the jury heard testimony that Mr. Poland gave the police multiple versions of the

events and engaged in behavior that could be construed as casing behavior. Even if Mr. Poland did not act as the principal offender, the trial court gave the jury a complicity instruction, and the State argued complicity in closing argument. "This Court will not overturn a verdict on a manifest weight challenge simply because the jury chose to believe the State's witnesses rather than [Mr. Poland]." *State v. Klein*, 9th Dist. Summit No. 26573, 2013-Ohio-3514, ¶ 12. After a thorough review of the record, we cannot conclude that this is the exceptional case where the jury lost its way in convicting Mr. Poland. *See Otten*, 33 Ohio App.3d at 340. Therefore, Mr. Poland's second assignment of error is overruled.

III.

{¶29} Mr. Poland's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

BELFANCE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

VICTORIA L. EARLE, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.